# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TERRENCE QUILLEN,
    Petitioner,

    vs

WARDEN, MARION
CORRECTIONAL INSTITUTION,
    Respondent.

Case No. 1:12-cv-160

Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Marion Correctional Institution in Marion, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was transferred to this Court from the United States District Court for the Northern District of Ohio. (Doc. 1; *see also* Docs. 3-4). This matter is before the Court on respondent's motion to dismiss the petition with prejudice on the ground that all of petitioner's grounds for relief "have been procedurally defaulted and [are] barred by the statute of limitations." (Doc. 8). Petitioner opposes respondent's motion. (Doc. 9). Petitioner has also filed a motion requesting a hearing in order to defend against the procedural bars to review. (Doc. 10).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

In March 2000, the Butler County, Ohio, grand jury returned an indictment charging petitioner with five counts of rape in violation of Ohio Rev. Code § 2907.02(A)(1)(b) and one count of sexual battery in violation of Ohio Rev. Code § 2907.03(A)(5). (Doc. 8, Ex. 1). On April 9, 2001, petitioner entered a guilty plea to three of the rape charges involving different minor victims (Counts One, Two and Four) in exchange for the dismissal of the remaining counts.

(*Id.*, Ex. 2). (*See id.*, Ex. 2). In the filed plea entry, which was executed by petitioner, petitioner's counsel and the prosecuting attorney, petitioner stated that he understood his "right to appeal a maximum sentence, [his] other limited appellate rights and that any appeal must be filed within 30 days of [his] sentence." (*Id.*, p. 2). The record reflects that the trial court accepted petitioner's guilty plea upon finding that petitioner "in open court, was advised of all applicable Constitutional rights and made a knowing, intelligent, and voluntary waiver of those rights pursuant to Crim. P. 11." (*Id.*).

On June 11, 2001, a sexual predator and sentencing hearing was held. On June 12, 2001, the court issued a Judgment Entry classifying petitioner as a sexual predator for purposes of sex-offender registration and notification under Ohio Rev. Code Chapter 2950. (*Id.*, Ex. 3). On June 13, 2001, the court entered final judgment sentencing petitioner to an aggregate prison term of eighteen (18) years, consisting of consecutive nine-year terms of imprisonment for two of the rape offenses and a concurrent nine-year prison term for the third rape offense. (*Id.*, Ex. 4). In the entry, the court stated that in determining petitioner's sentence, it had considered "the principles and purposes of sentencing under Ohio Revised Code Section 2929.11, and ha[d] balanced the seriousness and recidivism factors [under] Ohio Revised Code Section 2929.12." (*Id.*). In imposing consecutive sentences for two of the offenses, the court found that (1) the sentences were "necessary to protect the public from future crime or to punish the defendant and not disproportionate to the seriousness of the defendant's conduct and the danger the defendant posses (sic) to the public;" (2) the defendant "committed the multiple offenses while . . . under an order from the Juvenile Court to stay away from minors;" and (3) the "harm caused by the defendant was so great or unusual that no single prison term for any of the offenses committed as

part of a single course of conduct adequately reflects the seriousness of the defendant's conduct."
(*Id.*).  The sentencing entry also provided in pertinent part: "The Court has notified the defendant
that post release control is *mandatory* in this case up to a maximum of 5 years."  (*Id.*) (emphasis
in original).[1]

Respondent states that petitioner did not pursue an appeal from his conviction or sentence
in the state courts.  (*Id.*, Brief, p. 2).

## Motions For Judicial Release

On May 14, 2002, petitioner filed a motion for judicial release with the trial court, which
was overruled on May 17, 2002.  (*See* Doc. 8, Ex. 5).  Over nine years later, on September 16,
2011, petitioner filed a second motion for judicial release, which the trial court denied on
September 19, 2011.  (*See id.*, Ex. 8).

## State Proceedings On Motion For Delayed Appeal

On September 28, 2011, over ten years after petitioner was convicted and sentenced upon
entry of his guilty plea, petitioner filed a *pro se* notice of appeal and motion for leave to file a
delayed appeal to the Ohio Court of Appeals, Twelfth Appellate District.  In the motion,
petitioner challenged his aggregate 18-year sentence on the ground that it was "contrary to law"
and amounted to an "abuse of discretion" under the "Truth In Sentencing" laws enacted by the
Ohio legislature in 1996 in Senate Bill II.  (*See* Doc. 8, Ex. 9).  Petitioner claimed that as "a first
time offender," he had "received more than the max permitted" and should have received a

---

[1] Over five years later, on July 5, 2006, petitioner filed a motion with the assistance of counsel, requesting
that his sentence be corrected to reflect that he was entitled to "471 days of jail-time credit" instead of the 42-plus
days that were credited in the original judgment entry.  (*See* Doc. 8, Ex. 6; *see also id.*, Ex. 4).  Following an
investigation by the Butler County Adult Probation Department, the trial court issued a *nunc pro tunc* entry on
January 3, 2007, supplementing the judgment entry of conviction to credit petitioner with 401 days of jail time
served.  (*Id.*, Ex. 7).

"lighter sentence." (*Id.*, "Memorandum in Support," p. 17).  He also contended that his sentence

was "voidable and/OR in error" under the "allied offense rule." (*Id.*).  Plaintiff stated as "cause"

for his delay in filing that he believed his trial counsel "when instructed that my sentence was

lawful and the best I could get," and that only in 2011, after reading "H.B. 86," did he realize that

his sentence was "contrar[y] to law and that the Judge had to establish facts to support the

sentence." (*Id.*, "Affidavit of Terrence Quillen").  On November 30, 2011, the Ohio Court of

Appeals denied petitioner's delayed appeal motion and dismissed the case without opinion. (*Id.*,

Ex. 11).

Petitioner did not pursue a timely appeal to the Ohio Supreme Court.  On March 14, 2012,

he filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to the state supreme

court. (*Id.*, Exs. 12, 13).  Petitioner claimed as cause for his delay in filing that he was

misinformed about the filing deadline date by the Ohio Supreme Court Clerk's office. (*See id.*,

Ex. 13).  As support for his argument, petitioner submitted an exhibit showing that when he first

attempted to file a timely appeal with the Ohio Supreme Court, a deputy clerk returned his

pleadings by letter dated January 9, 2012 for failure to attach a date-stamped copy of the decision

being appealed as required by Rule 2.2(A)(4)(a) of the Rules of Practice of the Supreme Court of

Ohio.  The letter provided in pertinent part:  "If you are appealing a  December 31, 2011 decision,

the deadline for receiving your materials is February 14, 2012." (*See id.*, Ex. A).  Petitioner

apparently resubmitted corrected pleadings, which were received by the court clerk on January

23, 2012. (*See id.*, Ex. D).  However, a deputy clerk returned those pleadings to petitioner by

letter dated January 24, 2012; in that letter, petitioner was informed that the deadline for

appealing the November 30, 2011 decision attached to his memorandum in support of jurisdiction

4

had "passed on January 14, 2012." (*Id.*, Ex. E).

Upon review of the on-line docket records maintained by the Clerk of the Ohio Supreme Court, it appears that the state supreme court denied petitioner's delayed appeal motion and dismissed the cause without opinion on May 9, 2012. *See State v. Quillen,* No. 2012-0443, http://sconet.state.oh.us.

### State Habeas Corpus Petition: Post-Release Control

On February 27, 2012, after the Ohio Court of Appeals denied petitioner's delayed appeal motion, but before petitioner filed his motion for delayed appeal with the Ohio Supreme Court, petitioner filed a *pro se* petition for a writ of habeas corpus with the Ohio Court of Appeals, Third Appellate District. (Doc. 8, Ex. 14). Petitioner claimed that his sentence was void "for lack of post release control sentence." (*Id.*). The Ohio Court of Appeals denied the petition on April 4, 2012 on the ground that petitioner had "an adequate remedy at law to contest any error in the sentencing entry." (*Id.*, Ex. 15). The court reasoned in pertinent part:

> A defendant has an adequate remedy at law by way of direct appeal from his sentence to raise his claim that he did not receive proper notification of post release control; the remedy for improper notification of post release control is resentencing – not release from prison; and habeas corpus is not available to contest any error in the sentencing entry. . . . In addition, we note that a clerical error in the sentencing judgment regarding the notice of post release control may be corrected by the trial court with a *nunc pro tunc* judgment, when the notice was properly provided at the sentencing hearing.

(*Id.*).

### Motion To Dismiss Indictment/Re-Sentencing: Post-Release Control

On March 23, 2012, while the habeas corpus matter was pending before the Ohio Court of Appeals, petitioner filed a motion to dismiss the indictment with the trial court. (Doc. 8, Ex. 16).

5

He claimed in the motion that he "has languished in prison *(10) ten years plus*, without a sentence or conviction," in violation of his statutory speedy trial rights.  (*See id.*) (emphasis in original). The Butler County Clerk of Courts' on-line docket records reflect that the trial court overruled the motion on August 27, 2012.  In the entry, the court reasoned that petitioner had waived his right to challenge his conviction on statutory speedy trial grounds by entering a guilty plea, and the error in the sentencing entry regarding post-release control was subject to remedy at a "new sentencing hearing . . . limited to proper imposition of post release control." *See State v. Quillen*, Butler County Case No. CR2000-03-0306, http://pa.butlercountyclerk.org/pa/pa.urd/pamw2000-docket_1st?80919485.

Petitioner timely appealed the trial court's decision to the Ohio Court of Appeals, Twelfth Appellate District. *See State v. Quillen*, Butler County Case No. CA 12-09-177, http://pa.butlercountyclerk.org/pa/pa.urd/pamw2000-docket_1st?15901042.  On September 26, 2012, the Court of Appeals dismissed the appeal on the ground that the case involved "an outstanding issue yet to be determined, *i.e.*, proper imposition of post-release control," and, therefore, the trial court's ruling was "not a final appealable order." *See id.*

On October 9, 2012, the trial court held a re-sentencing hearing limited to the proper imposition of post-release control in accordance with its August 27, 2012 order overruling the motion to dismiss the indictment. *See State v. Quillen*, Butler County Case No. CR2000-03-0306, http://pa.butlercountyclerk.org/pa/pa.urd/pamw2000-docket_1st?80919485.  On October 16, 2012, the court entered a *nunc pro tunc* "Amended Judgment of Conviction Entry" amending the original sentencing entry to state that petitioner was notified "that post release control is mandatory in this case for 5 years." *Id.*  It appears that petitioner did not pursue an appeal from

6

the re-sentencing entry in the state courts.

### Federal Habeas Corpus Petition

The instant federal habeas corpus action was filed on February 13, 2012.  (*See* Doc. 1).

However, petitioner has averred that he placed the petition "in the prison mailing system" for

delivery to the Court on December 31, 2011.  (*See* Doc. 1, p. 16).  The filing date of a federal

habeas corpus petition submitted by a *pro se* prisoner is the date on which the prisoner provides

his papers to prison authorities for mailing.  *See Houston v. Lack,* 487 U.S. 266 (1988); *see also*

*Miller v. Collins,* 305 F.3d 491, 497-98 (6th Cir. 2002); *Goins v. Saunders,* 206 F. App'x 497,

499 n.1 (6th Cir. 2006).  Although the over one-month lapse in time between petitioner's claimed

date and the actual date of filing renders petitioner's declaration suspect, the undersigned assumes

in petitioner's favor that he submitted his petition to the prison mail-room as he has claimed and

that the petition was, therefore, filed for statute-of-limitations purposes on December 31, 2011.

In the petition, petitioner alleges three conclusory grounds for relief:

**Ground One:**  Sentence contrary to law.

**Ground Two:**  Ineffective Asst. of Counsel.

**Ground Three:**  The Appeals Court denied me right to due process and/or access to court.

**Supporting Facts:**  R.C. 2953.08 is designed for sentence review and the Appeals Court denied such due process and/or access to court for lawful relief.

(Doc. 1, pp. 6, 8, 9). [2]  Petitioner states in the petition that he raised the claims alleged in Grounds

---

[2] Petitioner states in the petition that the facts supporting his first two grounds for relief are set forth in "Attachment 'A'." (*See* Doc. 1, pp. 6, 8).  However, the only attachment to the petition is the completed civil cover sheet that petitioner submitted when filing the action in the Northern District of Ohio.  The attached cover sheet does not mention any "supporting facts" or otherwise make any reference to petitioner's claims.

7

One and Two in his motion for delayed appeal that was denied by the Ohio Court of Appeals on November 30, 2011. (*See id.*, pp. 4, 7, 8). Petitioner also states that he did not raise the claim alleged in Ground Three of the petition to the state courts because it was "a direct result from the Appeals Court denial [of] appellate review" in the delayed appeal matter. (*See id.*, p. 10).

In the motion to dismiss filed in response to the petition, respondent contends that all of petitioner's claims for relief are barred from review by the applicable one-year statute of limitations governing federal habeas petitions, which is set forth in 28 U.S.C. § 2244(d). (Doc. 8, pp. 4-7). Respondent also alternatively argues that petitioner has waived his claims as a result of his procedural defaults in the state courts. (*Id.*, pp. 7-10). Petitioner opposes respondent's motion to dismiss and requests an evidentiary hearing so that he can show that he is entitled to a merit-based review of his claims. (Docs. 9, 10).

## II. RESPONDENT'S MOTION TO DISMISS (DOC. 8) SHOULD BE GRANTED, AND PETITIONER'S MOTION FOR A HEARING (DOC. 10) SHOULD BE DENIED

### A. Grounds One And Two Should Be Dismissed With Prejudice Without A Hearing Because The Claims Are Time-Barred And Waived, And Petitioner Has Not Made Any Showing That The Bars To Review Should Be Excused

#### 1. Statute-of-Limitations.

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State

8

action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under 28 U.S.C. § 2244(d)(2), the limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review.

In this case, the Court must first determine which limitations provision contained in 28 U.S.C. § 2244(d)(1) applies to petitioner's claims for relief. As an initial matter, it is clear from the record that neither § 2244(d)(1)(C) nor § 2244(d)(1)(B) governs any of petitioner's claims. Petitioner has not asserted a constitutional right that has been newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review,[3] nor has he alleged facts indicating that he was prevented from filing a timely habeas petition by any state-created impediment to filing. Therefore, only § 2244(d)(1)(A) and § 2244(d)(1)(D) are arguably applicable in the case-at-hand.

In evaluating petitioner's claims, it appears that the later limitations provision set forth in 28 U.S.C. § 2244(d)(1)(D) governs the claim alleged in Ground Three, because petitioner is

---

[3] Petitioner is unable to prevail on any claim that § 2244(d)(1)C applies to the extent he has argued that in determining his 18-year sentence in 2001, the trial court violated his Sixth Amendment jury-trial right in light of the Supreme Court's subsequent decisions in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), as well as the Ohio Supreme Court's even later decision in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006). (*See* Doc. 8, Ex. 9, "Memorandum In Support," pp. 7-8). It is well-settled that *Blakely*, *Booker* and *Foster* do not retroactively apply to delay the limitations period under § 2244(d)(1)C) in a collateral review proceeding such as this given that the petitioner's conviction and sentence became final before those decisions were rendered. *See, e.g., Snead v. Warden, Madison Corr. Inst.*, No. 1:11cv127, 2011 WL 6817872, at *9 (S.D. Ohio Dec. 28, 2011) (Litkovitz, M.J.) (Report & Recommendation) (and numerous cases cited therein), *adopted*, 2012 WL 3835105 (S.D. Ohio Sep. 4, 2012) (Spiegel, J.).

9

essentially challenging the Ohio Court of Appeals' decision on November 30, 2011 to deny his delayed appeal motion. The facts giving rise to petitioner's claim did not exist until the state appellate court issued its ruling refusing to grant petitioner an appeal. Therefore, the claim alleged in Ground Three, which could not have accrued before November 30, 2011, is not time-barred.

In contrast, in Grounds One and Two of the petition, petitioner raises claims challenging his trial counsel's performance and the 18-year sentence that was imposed in the underlying trial proceedings that concluded upon entry of his sentence in June 2001. Petitioner suggests that § 2244(d)(1)(D) applies and that his claims are not time-barred under that provision because it was not until he read a state legislative bill in 2011 that he realized his sentence was "contrary to law" and that his counsel had been ineffective in advising him about the sentence. However, petitioner's contention is unavailing because § 2244(d)(1)(D) is triggered by the inability to discover the *factual predicate* of a claim, rather than the inability to understand the *legal issues* that may be raised based on known facts. *Cf. Tatum v. Warden, Allen Corr. Inst.,* No. 1:07cv355, 2008 WL 1766790, at *1, *7 n.5 (S.D. Ohio Apr. 11, 2008) (Beckwith, J.; Black, M.J.) (and cases cited therein) (the § 2244(d)(1)(D) "inquiry turns on the discovery of the facts giving rise to the petitioner's claim, not the discovery of the legal basis or all evidence supporting the claim") (internal citation and quotation omitted); *see also Dixon v. Jeffreys*, No. 2:11cv86, 2011 WL 6009695, at *3 (S.D. Ohio Oct. 5, 2011) (Deavers, M.J.) (Report & Recommendation) (quoting *Reese v. Timmerman-Cooper*, No. 3:10cv218, 2010 WL 2998880, at *1 (S.D. Ohio June 28, 2010) (Merz, M.J.) (Report & Recommendation) ("Nothing in § 2244 suggests that the statute begins to run when a petitioner finally understands the legal significance of facts relevant to his

10

claim."), *adopted*, 2010 WL 2998889 (S.D. Ohio July 28, 2010) (Rose, J.)), *adopted*, 2011 WL 6019102 (S.D. Ohio Dec. 1, 2011) (Graham, J.). Therefore, the undersigned concludes, as respondent has contended in the motion to dismiss, that the claims alleged in Grounds One and Two of the petition are governed by the one-year limitations provision set forth in § 2244(d)(1)(A), which began to run when the judgment became final by the conclusion of direct review or the expiration of time for seeking such review.

Here, it appears that petitioner's conviction became final on July 13, 2001, when the 30-day period expired for filing an appeal as of right to the Ohio Court of Appeals from the trial court's June 13, 2001 sentencing entry. (*See* Doc. 8, Ex. 4). *See also* Ohio R. App. P. 4; Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio*, 235 F.3d 280, 285 (6th Cir. 2000). Petitioner's unsuccessful motion filed in September 2011 for leave to file a delayed appeal to the Ohio Court of Appeals, as well as his unsuccessful motion filed in March 2012 for leave to file a delayed appeal to the Ohio Supreme Court, did not restart the running of the statute under § 2244(d)(1)(A), but rather could only serve to toll an unexpired limitations period under § 2244(d)(2). *See, e.g., Sayles v. Warden, London Corr. Inst.,* No. 1:11cv524, 2012 WL 3527226, at \*5 n.1 (S.D. Ohio July 17, 2012) (Wehrman, M.J.) (Report & Recommendation) (and numerous cases cited therein), *adopted*, 2012 WL 3527140 (S.D. Ohio Aug. 15, 2012) (Dlott, J.); *cf. Little v. Warden, Warren Corr. Inst.*, No. 1:10cv468, 2011 WL 2358565, at \*4 n.2 (S.D. Ohio May 16, 2011) (Litkovitz, M.J.) (Report & Recommendation) (noting that although the Supreme Court held in *Jimenez v. Quarterman*, 555 U.S. 113, 120-21 (2009), that the *granting* of a delayed appeal motion restores the pendency of the direct appeal, thereby rendering the conviction non-final under § 2244(d)(1)(A), a delayed appeal motion that is *denied* does not restart the limitations period), *adopted,* 2011 WL 2293316

11

(S.D. Ohio June 9, 2011) (Bertelsman, J.). *See generally Gonzalez v. Thaler,* _ U.S. _, 132 S.Ct. 641, 653-54 (2012) (distinguishing *Jimenez*, where the Court adopted "the out-of-time appeal's date of finality over the initial appeal's date of finality," in holding that the petitioner's state conviction became final under § 2244(d)(1)(A) "when his time for seeking review with the State's highest court expired"). An argument can be made, however, that under the Supreme Court's decision in *Burton v. Stewart,* 549 U.S. 147 (2007) (per curiam), and the Sixth Circuit's decision in *Rashad v. Lafler,* 675 F.3d 564 (6th Cir. 2012), the statute-of-limitations clock was restarted when the trial court issued *nunc pro tunc* amendments to the June 13, 2001 sentencing entry in January 2007 and October 2012 to correct errors regarding jail-time credit and post-release control.

In *Burton*, the petitioner was convicted and sentenced in 1994, re-sentenced in 1996, and re-sentenced a second time in 1998. *See Burton,* 549 U.S. at 149–51. In 1998, after the final re-sentencing judgment was entered, but while his appeal from that entry was pending in the state courts, the petitioner filed a § 2254 petition requesting review of the 1994 judgment of conviction, wherein he raised claims challenging the underlying convictions only and not his sentence. *Id.* at 151. The district court denied relief, and the circuit court affirmed. *Id.* In 2002, after exhausting his state court appeal from the 1998 re-sentencing decision, petitioner filed another federal habeas petition contesting the 1998 judgment, wherein he challenged only the constitutionality of his sentence. *Id.* at 151–52. Although the district and circuit courts reviewed the petition on the merits, the Supreme Court held that it constituted a "second or successive" petition under 28 U.S.C. § 2244(b), which the district court lacked jurisdiction to consider absent authorization from the circuit court pursuant to gate-keeping provisions set forth in § 2244(b)(3). *Id.* at 152. In

12

so holding, the Court rejected the petitioner's argument that his 1998 and 2002 petitions

challenged different judgments. *Id.* at 155–56. The Court reasoned that the 1998 judgment was

the judgment pursuant to which petitioner was being detained both when he filed his first petition

in 1998 and his second petition in 2002, and that "there was no new judgment intervening

between the two habeas petitions." *Id.* at 156. Of particular relevance to this case involving a

statute-of-limitations issue, the Court also rejected another argument asserted by petitioner to the

effect that "had he not filed the 1998 petition when he did, and instead waited until state review of

his sentencing claims was complete, he risked losing the opportunity to challenge his conviction

in federal court due to [the] 1–year statute of limitations" set forth in 28 U.S.C. § 2244(d)(1). *Id.*

The Court stated:

> [T]his argument misreads [the statute], which states that the limitations period
> applicable "to a person in custody pursuant to the judgment of a State court" shall
> run from, as relevant here, "the date on which the judgment became final by the
> conclusion of direct review or the expiration of time for seeking such review." §
> 2244(d)(1)(A). "Final judgment in a criminal case means sentence. The sentence
> is the judgment.". . . Accordingly, Burton's limitations period did not begin until
> both his conviction *and* sentence "became final by the conclusion of direct review
> or the expiration of the time for seeking such review"—which occurred well *after*
> Burton filed his 1998 petition.

*Id.* at 156–57 (quoting *Berman v. United States,* 302 U.S. 211, 212 (1937)) (emphasis in original).

In *Rashad*, the petitioner was convicted in 1989 in Michigan of a state drug-trafficking

offense, which at the time carried a mandatory sentence of life in prison without the possibility of

parole. *See Rashad*, 675 F.3d at 566. Holding that the sentence violated the state constitution's

ban on cruel and unusual punishment, the trial court instead sentenced petitioner to a prison term

of 40 to 100 years. *Id.* On petitioner's appeal and the State's cross-appeal, the state appellate

court affirmed the petitioner's conviction, but reversed his sentence on the ground that the

mandatory life sentence did not amount to cruel and unusual punishment under the state

constitution. *Id.* The petitioner was re-sentenced over ten years later in May 2004 to a life term

of imprisonment with the possibility of parole in light of a 1992 state supreme court decision

holding that the "without-parole component of this kind of life sentence violated the state

constitution's ban on cruel and unusual punishment." *See id.* at 567. In 2008, after exhausting his

appeal from the 2004 re-sentencing decision, the petitioner filed his first federal habeas petition

raising claims challenging both his 1989 conviction and 2004 sentence. *See id.* The district court

denied the petition, and an appeal ensued wherein the State raised the argument that petitioner's

claims challenging his 1989 conviction were not subject to review on the merits because they

were time-barred. *See id.* The Sixth Circuit rejected the State's contention and held that the

petitioner had "timely filed all of his claims, including those challenging the underlying

conviction." *Id.* at 568. In so ruling, the court reasoned in relevant part:

> One premise of the State's argument is straightforward: A judgment in a criminal
> case typically becomes final after direct review by the state courts and the United
> States Supreme Court or at the end of the time for seeking such review. *See*
> *Jimenez v. Quarterman,* 555 U.S. 113, 119–20, 129 S.Ct. 681, 172 L.Ed.2d 475
> (2009).
>
> Another premise is not. Although the Michigan appellate courts affirmed
> Rashad's *conviction* in 1993, they threw out his *sentence* and remanded the case
> for resentencing. When does a petitioner's "judgment bec[o]me final," §
> 2244(d)(1)(A), in this setting? After direct review of the conviction? Or after
> direct review of the new sentence imposed at resentencing?
>
> *Burton . . . ,* it seems to us, shows that the judgment becomes final after direct
> review of the new sentence. . . .
>
> Burton's situation parallels Rashad's in all material ways. Burton's 1998 petition
> raised claims challenging his conviction from several years before, but the statute
> of limitations had not yet started to run because direct review of the new sentence
> he received on resentencing was not yet complete. So too here. Rashad filed his

14

petition within the limitations period after direct review of his *new* sentence ended. Rashad timely filed all of his claims, including those challenging the underlying conviction.

A contrary approach would require Rashad to bifurcate the claims arising from his criminal case into distinct judgments–one related to the conviction, one related to the sentence. Yet the AEDPA statute of limitations speaks of one "judgment," § 2244(d)(1)(A), not many. And *Burton* tells us the "judgment in a criminal case means sentence." 549 U.S. at 156. . . . Besides splitting each criminal judgment into two, the State's approach would require petitioners to comply with different limitations clocks for each judgment and, it is worth adding, would require the State to defend two cases rather than one. That approach would not advance "AEDPA's goal of streamlining federal habeas proceedings," *Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), as it would force prisoners who have their convictions affirmed but their sentences vacated–a "not uncommon situation," *Burton,* 549 U.S. at 154, . . .–to file dual petitions. A fair reading of the language of AEDPA together with *Burton* does not support this approach, and neither do the decisions of any other circuits. To our knowledge, all of the circuits to address this question after *Burton* agree that the limitations clock in this setting begins after the new sentence. *See Scott v. Hubert,* 635 F.3d 659, 666 (5th Cir. 2011)[, *cert. denied,* 132 S.Ct. 763 (2011)]; *Villaneda v. Tilton,* 432 Fed.Appx. 695, 695 (9th Cir. 2011) (government conceded judgment did not become final until after resentencing); *Ferreira v. Sec'y, Dep't of Corr.,* 494 F.3d 1286, 1292–93 (11th Cir. 2007); *cf. United States v. Carbajal–Moreno,* 332 Fed.Appx. 472, 474–76 (10th Cir. 2009) (reaching same result based on similar language in 28 U.S.C. § 2255(f)(1)).

*Id.* at 567-68 (emphasis in original).

The Sixth Circuit continued its analysis in *Rashad* by distinguishing its prior published

decision in *Bachman v. Bagley*, 487 F.3d 979 (6th Cir. 2007), which involved the question

whether the statute of limitations began anew based on a sexual predator determination made by

the trial court years after the petitioner's underlying conviction and sentence had been affirmed on

direct appeal. *See Rashad*, 675 F.3d at 569. Specifically, in *Bachman*, the Sixth Circuit held that

the petitioner's "designation as a sexual predator started the running of a ne[w] statute of

limitations period with respect to challenges to the sexual predator designation *only*—not with

15

respect to challenges to his underlying conviction." *Bachman*, 487 F.3d at 983 (footnote

omitted). The *Rashad* court distinguished *Bachman* as follows:

> *Bachman* differs from today's case because the state appellate
> courts affirmed Bachman's conviction *and his sentence* on the first
> round of direct review. His judgment thus became final upon the
> conclusion of that first round of direct review, *Burton,* 549 U.S. at
> 156–57, . . . and he could not use his subsequent designation as a
> sexual predator to reopen his final conviction. Here, by contrast,
> Rashad's judgment did not become final after his first round of
> direct review because he no longer was subject to a sentence. The
> judgment became final upon the conclusion of direct review of the
> new sentence he received at resentencing. *See id.* at 156–57. . . .

*Rashad*, 675 F.3d at 569.

This case falls somewhere between *Rashad* and *Bachman* because, unlike *Bachman*, the

Ohio Court of Appeals' subsequent decisions in 2007 and 2012 resulted in modifications to

petitioner's sentence. However, unlike *Rashad*, petitioner does not raise any claims in the instant

action based on issues that resulted in the later recalculation of jail-time credit and notification to

petitioner that he was subject to a five-year mandatory term of post-release control, as opposed to

a mandatory term "up to a maximum of 5 years" as set forth in the original sentencing entry. (*See*

Doc. 8, Ex. 4). Therefore, the question posed here is whether the uncontested *nunc pro tunc*

modifications to petitioner's sentence, which did not impact petitioner's underlying conviction on

three counts of rape or the aggregate 18-year sentence imposed for those offenses, amounts to a

"new" sentence that re-triggered the running of the § 2244(d)(1)(A) statute of limitations.

Courts confronted with the question whether a modification to a sentence, as opposed to a

re-sentencing, restarts the §2244(d)(1)(A) limitations period have rejected the argument that *any*

modification to a sentence results in a "new" judgment for statute of limitations purposes. *See,*

16

*e.g., Murphy v. United States,* 634 F.3d 1303, 1311-12 (11th Cir. 2011); *see also Speller v. Johnson,* No. 3:09cv463, 2012 WL 1038624, at *9 n.21 (E.D. Va. Mar. 27, 2012) (and cases cited therein) (noting that "courts have rejected the notion that alterations to a defendant's sentence, short of a resentencing, alter the date at which finality attaches for purposes of the AEDPA's statute of limitations"); *Kilgore v. Superintendent, Miami Corr. Facility,* No. 3:09-CV-419-TLS, 2012 WL 868613, at *2 (N.D. Ind. Mar. 13, 2012) ("It is well-established that resentencing–as opposed to sentence modification–restarts the AEDPA statute of limitations."). Instead, courts examine the surrounding circumstances to determine whether a sentence modification should be considered "equivalent" to a re-sentencing that restarts the running of the clock in a particular case. *Cf. Kilgore, supra,* 2012 WL 868613, at *2-3 (holding that the sentence modification in that case "was the equivalent of the resentencings found . . . to restart the AEDPA clock" because the alleged error giving rise to the sentence modification existed at the time the petitioner was originally sentenced and because the habeas petition challenged only the sentence modification, and it therefore "ma[de] no sense to construe the statute of limitations for th[at] claim as commencing on the date of his original sentencing rather than the date of the sentence he is actually challenging–the sentence modification").

In analogous cases, courts have held that a trial court's *nunc pro tunc* judgment entry to correct a technical or clerical error in the original sentence does not constitute a new judgment of sentence that restarts the running of the § 2244(d)(1)(A) statute of limitations. *See, e.g., Davis v. Coleman,* No. 5:11cv996, 2012 WL 5385209, at *2 (N.D. Ohio Nov. 1, 2012), *affirming and adopting*, 2012 WL 967300, at *4-7 (N.D. Ohio Mar. 6, 2012) (Report & Recommendation); *see also Speller, supra,* 2012 WL 1038624, at *9 n.21 ("courts have uniformly held that when a court

17

corrects a clerical error in a criminal judgment, the AEDPA's one-year limitations period does not

begin anew when the court corrects the clerical error") (internal citation and quotation marks

omitted). *Cf. In re Martin,* 398 F. App'x 326, 327 (10th Cir. 2010) (holding that an "amended

judgment merely correct[ing] a clerical error–one which did not rise to the level of constitutional

error," did *not* constitute an intervening judgment that rendered a subsequent federal habeas

petition non-successive within the meaning of 28 U.S.C. § 2244(b)); *see also In re Lampton,* 667

F.3d 585, 587-89 (5th Cir. 2012); *Hawkins v. United States,* No. 89-CR-80335, 2011 WL

2533658, at *1-2 (E.D. Mich. June 27, 2011).

Indeed, in a case directly on point to the instant case, a federal district court in Ohio

rejected the petitioner's objections and upheld the magistrate judge's recommended ruling that a

*nunc pro tunc* sentencing entry filed after a re-sentencing hearing to inform the petitioner, who

had been convicted and sentenced three years earlier upon entry of a guilty plea, that he was

subject to a five-year mandatory term of post-release control, as opposed to a mandatory term "for

up to a maximum period of five years" as set forth in the original sentencing entry, "did not

substantially alter the original judgment entry" and, therefore, did not affect the finality of that

judgment for federal habeas statute of limitations purposes. *See Davis, supra,* 2012 WL 5385209,

at *2 (N.D. Ohio Nov. 1, 2012), *affirming and adopting,* 2012 WL 967300, at *4-7 (N.D. Ohio

Mar. 6, 2012) (Report & Recommendation). Similarly, a district court in Oklahoma held that

neither the limitations period was restarted nor a new limitations period triggered by a

modification to the petitioner's sentence, wherein "the suspended portion" of a 30-year sentence

"with the last ten years suspended" was vacated because of the petitioner's ineligibility to receive

a suspended sentence. *Miller v. Mullin,* No. CIV-11-172-C, 2011 WL 2927235, at *2 & n.2

18

(W.D. Okla. June 27, 2011) (Report & Recommendation), *adopted*, 2011 WL 2923980 (W.D.

Okla. July 19, 2011). In addition, courts have held that a modification to a sentence like the one

imposed in 2007 in the instant case, which affords a sentence credit or otherwise reduces the

defendant's sentence, does not alter the date at which finality attaches for statute-of-limitations

purposes. *See, e.g., Graham v. Smelser*, 422 F. App'x 705, 707-08 (10th Cir. 2011) (and cases

cited therein); *Speller, supra,* 2012 WL 1038624, at *4 & n.13, 9 n.21 (involving modification to

a sentence in May 2009 to accord credit for time served on another sentence and a subsequent

modification in June 2009 to correct an error in calculating the credit amount). *Cf. Murphy*, 634

F.3d at 1312-13 (and cases cited therein) (involving modification pursuant to the government's

Fed. R. Crim. P. 35(b) post-sentence motion for reduction in the federal criminal defendant's

sentence based on the defendant's "substantial assistance" in the investigation or prosecution of

another person).

Finally, it appears that neither the Supreme Court nor the Sixth Circuit and lower courts

within the Sixth Circuit have extended *Burton* and *Rashad* to a case such as this where no claims

have been raised that stem from or otherwise challenge the later modifications to the petitioner's

sentence.[4] Indeed, in *Bachman*, the Sixth Circuit noted that "the rule that the date of 'judgment'

under § 2244(d)(1)(1) is the date of a subsequent sentencing proceeding applies only to habeas

petitions challenging the resentencing decision itself." *Bachman*, 487 F.3d at 983 n.3. *Bachman*

was undermined by *Burton* and *Rashad* only to the extent that the court refused to to follow

---

[4] *Johnson v. Brunsman,* No. 2:09cv369, 2010 WL 1856301, at *2 (S.D. Ohio May 10, 2010) (Kemp, M.J.)
(Report & Recommendation), *adopted*, 2010 WL 2301287 (S.D. Ohio June 7, 2010) (Watson, J.), is distinguishable
because although the petitioner only raised claims challenging the underlying conviction in that case, the court did
not address the issue, but instead determined that the petition was time-barred even if the statute of limitations did not
begin to run until the re-sentencing decision became final. *See id.* at *2-3.

precedents holding that re-sentencing starts the statute of limitations for *all* claims, including those arising from the original conviction. *See Johnson v. Warden, Lebanon Corr. Inst.,* No. 1:09cv336, 2010 WL 2889056, at *5-7 (S.D. Ohio June 23, 2010) (Wehrman, M.J.) (Report & Recommendation), *adopted*, 2010 WL 2889057 (S.D. Ohio July 20, 2010) (Beckwith, J.). In any event, the Tenth Circuit has also held in a post-*Burton* case that in order for a re-sentencing decision to be deemed "sufficient to restart the limitations period," the petitioner must "bring at least *some* claim challenging the *resentencing*, as opposed to the original conviction." *Vallez v. Hartley,* 305 F. App'x 505, 508 (10th Cir. 2008) (emphasis in original). Lower courts have followed *Vallez*, as well as *Bachman*, in similarly concluding that when a habeas petitioner does not challenge his re-sentencing, the judgment of conviction becomes final under § 2244(d)(1)(A) at the time the original sentence was entered, not when he was re-sentenced. *See, e.g., Moore v. Minnesota,* Civ. Act. No. 10-3843 (JRT/FLN), 2010 WL 6634573, at *3 (D. Minn. Oct. 20, 2010) (Report & Recommendation), *adopted*, 2011 WL 1827472 (D. Minn. May 12, 2011); *see also Haynes v. Barr*, No. 11-cv-03121-BNB, 2012 WL 366572, at *4 (D. Colo. Feb. 2, 2012).

Most recently, after examining all the developments in the case-law since *Burton* and *Rashad* were decided, this Court determined that the statute of limitations was not retriggered when the Ohio Court of Appeals *sua sponte* vacated the portion of the trial court's original sentencing entry improperly imposing a five-year mandatory term of post-release control on a defendant who was convicted and sentenced for aggravated murder and, therefore, ineligible for post-release control. *See Eberle v. Warden, Mansfield Corr. Inst.*, No. 1:11cv867, 2012 WL 4483066, at *8-14 (S.D. Ohio Aug. 2, 2012) (Wehrman, M.J.), *adopted*, 2012 WL 4483427 (S.D. Ohio Sept. 27, 2012) (Barrett, J.). In that case, the Court ruled that the later modification to the

20

petitioner's sentence did not affect the finality date for statute of limitations purposes, because the change did not "substantially alter the original judgment entry" and because it was "clear from the record that post-release control was not a part of the parties' plea bargain or a factor in the petitioner's decision to enter a guilty plea." *Id.* at *14. The Court also reasoned in pertinent part:

> Perhaps most importantly, petitioner does not assert any claims in his habeas petition challenging either his guilty plea based on the trial court's error regarding post-release control or the Ohio Court of Appeals' modification to his sentence to correct that error. Instead, petitioner only challenges the validity of his guilty plea based on . . . claims that he first raised to the trial court in his motion to withdraw his guilty plea. Those claims, which arose *before* the Ohio Court of Appeals *sua sponte* added the post-release control matter as an issue to be decided on appeal, pertained to the original judgment of conviction. . . .

*Id.* (emphasis in original).

The undersigned is similarly persuaded upon review of the case law that has developed in the wake of *Burton* and *Rashad*, including this Court's most recent decision in *Eberle*, that the *nunc pro tunc* modifications made in 2007 and 2012 to petitioner's sentence did not affect the finality of the judgment of conviction and sentence challenged by petitioner, which was entered on June 13, 2001 when he was convicted and sentenced upon entry of his guilty plea. Therefore, as respondent has argued in the motion to dismiss (*see* Doc. 8, p. 6), because petitioner's conviction became final on July 13, 2001, the statute of limitations began to run on July 14, 2001 and expired one year later on July 14, 2002, absent application of statutory or equitable tolling principles.

Under 28 U.S.C. § 2244(d)(2), petitioner was entitled to statutory tolling of the one-year limitations period based on any pending "properly filed" applications for state post-conviction relief or other collateral review. *See* 28 U.S.C. § 2244(d)(2); *Holland v. Florida,* __ U.S. __, 130

21

S.Ct. 2549, 2554 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). "The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman,* 346 F.3d at 602 (quoting *Rashid v. Khulmann,* 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Id.*

In this case, during the one-year limitations period that commenced on July 14, 2001 and ended on July 14, 2002, petitioner filed only one motion for judicial release, which at most tolled the statute for three additional days while it was pending before the trial court for ruling.[5] (*See* Doc. 8, Ex. 5). Petitioner did not file any of his other state post-conviction motions, including his motions for delayed appeal to the Ohio Court Appeals and Ohio Supreme Court, until years after the statute-of-limitations had run its course in July 2002. Therefore, statutory tolling under § 2244(d)(2) is unavailable to avoid the statute of limitations bar to review in this case.

The AEDPA's statute of limitations is also subject to equitable tolling, *see Holland*, 130 S.Ct. at 2560, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)), *cert. denied*, 133 S.Ct. 187 (2012). Equitable tolling is granted "sparingly." *Id.* (quoting *Robertson*, 624 F.3d at 784). A habeas petitioner is entitled to equitable tolling only if he establishes that (1) "he has been pursuing his rights diligently;" and (2) "some extraordinary circumstance stood in

---

[5] It is noted, however, that courts have held that "[a] motion for judicial release is not a collateral attack on the underlying conviction or sentence, and thus does not toll the AEDPA statute of limitations." *See, e.g., Imburgia v. Bradshaw*, No. 1:09cv2009, 2010 WL 1628054, at *5 (N.D. Ohio Apr. 22, 2010) (and cases cited therein).

his way and prevented timely filing." *Id.* (quoting *Holland,* 130 S.Ct. at 2562 (internal quotations omitted)); *see also Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005). Although the Sixth Circuit previously utilized a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, *Holland*'s two-part test has replaced the five-factor inquiry as the "governing framework" to apply. *Hall,* 662 F.3d at 750 (citing *Robinson v. Easterling,* 424 F. App'x 439, 442 n.1 (6th Cir.), *cert. denied,* 132 S.Ct. 456 (2011)). "With *Holland* now on the books, the 'extraordinary circumstances' test, which requires both reasonable diligence and an extraordinary circumstance, has become the law of this circuit." *Id.; see also Patterson v. Lafler,* 455 F. App'x 606, 609 n.1 (6th Cir. 2012).

Petitioner has not demonstrated that he is entitled to equitable tolling in this case. First, petitioner has not shown that he has been diligent in pursuing his rights. He waited over ten years after he was convicted and sentenced before he filed his motion for delayed appeal to the Ohio Court of Appeals, raising for the first time the claims asserted in Grounds One and Two challenging his trial counsel's effectiveness and the 18-year sentence that was imposed on June 13, 2001.

Second, petitioner has not shown that he was prevented by some extraordinary circumstance from seeking relief in a timely manner. Petitioner has only claimed as justification for his delay in filing that he relied on his trial counsel's advice regarding the propriety of his sentence and did not discover errors in his sentencing until 2011 when he read a state legislative bill. Upon review of the record, the undersigned is not persuaded by petitioner's conclusory assertion that his trial counsel was ineffective. Indeed, contrary to his contentions in his motion for delayed appeal to the Ohio Court of Appeals, the record reflects that the 18-year sentence for

23

three separate rape offenses did not exceed the maximum sentence permitted by state law and was properly determined in accordance with the law in effect at that time. In any event, it is well-settled that lack of knowledge of the law does not constitute an extraordinary circumstance sufficient to excuse the statute of limitations bar to review. *Cf. Hall*, 662 F.3d at 751-52; *see also Johnson v. United States,* 544 U.S. 295, 311 (2005) (in a case where the defendant defended his delay in challenging a state conviction on the basis of his *pro se* status and lack of "sophistication" in understanding legal procedures, the Court stated: "[W]e have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness.").

Accordingly, in sum, the undersigned concludes that although the claim asserted in Ground Three is not time-barred, the claims alleged in Grounds One and Two are barred from review under the applicable provision set forth in 28 U.S.C. § 2244(d)(1)(A). The statute of limitations governing those claims commenced running in July 2001, and expired one year later in July 2002. Neither statutory nor equitable tolling principles apply to avoid the statute-of-limitations bar in this case. Therefore, Grounds One and Two are time-barred.

## 2. Waiver.

Alternatively, the time-barred claims alleged in Grounds One and Two of the petition are barred from review and thus subject to dismissal with prejudice because petitioner procedurally defaulted and has waived the claims for relief.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the

state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner

25

files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). In those cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991). Moreover, in *Harris,* the Supreme Court explained that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The Court stated: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

The rule precluding federal habeas corpus review of claims rejected by the state courts on

state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

The Sixth Circuit employs a three-prong test that was initially established in *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw,* 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)), *cert. denied,* 131 S.Ct. 2117 (2011); *see also Johnson v. Bradshaw,* __ F. App'x __, No. 06-3141, 2012 WL 3241545, at *2 (6th Cir. Aug. 9, 2012). Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate

27

cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson, supra,* 2012 WL 3241545, at *3. *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner procedurally defaulted the claims he has alleged in Grounds One and Two by first failing to file a timely appeal to the Ohio Court of Appeals from the trial court's June 13, 2001 final judgment of conviction and sentence and, thereafter, failing to perfect a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' November 30, 2011 decision denying petitioner's delayed appeal motion.

It is undisputed that petitioner waited over ten years after the entry of his sentence to file a motion for a delayed appeal under Ohio R. App. P. 5 with the Ohio Court of Appeals. The Sixth Circuit has held that the Ohio Court of Appeals' discretionary decision to deny a Rule 5 delayed-appeal motion based on the appellant's failure to adequately explain his or her delay in filing can constitute an adequate and independent basis for the state court's decision that is sufficient to foreclose federal habeas review of the petitioner's claims. *See Stone v. Moore*, 644 F.3d 342, 346-48 (6th Cir. 2011) (overruling *Dietz v. Money,* 391 F.3d 804, 810-11 (6th Cir. 2004)). In contrast to *Stone*, however, the state appellate court in this case was silent about its reasons for denying petitioner's motion. Because the court did not specify whether it was denying a delayed appeal based on the merits of petitioner's claims or on petitioner's significant unjustified delay in seeking an appeal, the undersigned will assume, without deciding, that the intermediate appellate court's refusal to grant a delayed appeal was based on the merits of petitioner's claims.

28

Nevertheless, undersigned concludes that petitioner's second default in failing to file a timely appeal to the Ohio Supreme Court does constitute and adequate and independent state ground that was relied on by the Ohio Supreme Court in denying petitioner's motion for delayed appeal to the state's highest court. The Sixth Circuit has explicitly held that the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *see generally Harris,* 489 U.S. at 260-62. In so holding, the Sixth Circuit reasoned that "the applicable Ohio [Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla,* 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein). The court explained:

> The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id.* A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal. *Id.* Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4)(c). Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.

*Id.* at 497.

As in *Bonilla,* petitioner failed to file a timely notice of appeal with the Ohio Supreme Court and his motion for leave to file a delayed appeal was denied by that court apparently because he did not provide adequate reasons for his delay in filing. *See id.* In this case, as in *Bonilla,* the Ohio Supreme Court was "entirely silent as to its reasons for denying [the] requested

29

relief." *Id.* In such circumstances, it must be assumed that the state supreme court enforced the applicable procedural bar to review. *Id.* (citing *Sparkman,* 94 F.3d at 203).

Because petitioner failed to comply with a state procedural rule, which was relied on by the Ohio Supreme Court in denying his motion for delayed appeal, the Ohio Supreme Court was not provided with an opportunity to consider the merits of petitioner's claims. Therefore, this Court's review of the claims alleged in Grounds One and Two of petition is barred unless petitioner "can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 497 (quoting *Coleman,* 501 U.S. at 750).

Petitioner has not established cause for his procedural default in this case. The only argument that petitioner has asserted to justify his delay in filing to the state supreme court is that he was misinformed of the filing deadline date by the Ohio Supreme Court Clerk's office. (*See* Doc. 8, Ex. 13). The undersigned is not persuaded by petitioner's argument. First, it is clear from the record submitted by petitioner to the state supreme court as support for his "cause" argument that a deputy clerk merely informed petitioner that February 14, 2012 was the deadline date for filing an appeal "*[i]f* he was appealing a December 31, 2011 decision." (*Id.*, Ex. A) (emphasis added). Contrary to petitioner's contention, the deputy clerk's letter did not contain any misinformation and correctly advised petitioner of the amount of time available to timely appeal a decision issued on December 31, 2011. Petitioner could have easily calculated the correct deadline date for his appeal from the information that was provided and certainly should not have relied on February 14, 2012 as the deadline date for appealing a decision rendered a month earlier on November 30, 2011. In any event, even assuming for the sake of argument that petitioner was

30

misled into believing that he had until February 14, 2012 to file a timely appeal, he has not

explained his 50-day delay in filing a motion for delayed appeal with the state supreme court after

he was informed by the clerk's office on January 24, 2012 that the January 14, 2012 filing

deadline had passed. (*See id.*, Ex. E). Because petitioner thus has not demonstrated cause for his

procedural default, he is unable to satisfy the "cause and prejudice" standard for excusing the

procedural bar to review in this case.

Finally, petitioner has not argued, nor does the record demonstrate, that failure to consider

his defaulted claims will result in a "fundamental miscarriage of justice," or in other words, that

the alleged errors "probably resulted in the conviction of one who is actually innocent." *See*

*Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d

at 498. In the absence of such a showing, petitioner is unable to overcome the procedural bar to

review.

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted the

claims alleged in Grounds One and Two by failing to file a timely appeal to the Ohio Supreme

Court from the Ohio Court of Appeals' denial of his delayed appeal motion. Because petitioner

has not demonstrated cause for his procedural default or that a fundamental miscarriage of justice

will occur if the claims are not considered by this Court, petitioner has waived the two grounds

for relief. Therefore, the time-barred claims alleged in Grounds One and Two should be

dismissed with prejudice on the alternative ground that they are barred from review due to

petitioner's procedural default in the state courts.

31

**B. Ground Three Challenging The Ohio Court Of Appeals' Refusal To Grant Petitioner A Delayed Appeal Should Be Dismissed With Prejudice Without A Hearing Because The Claim Is Waived And, In Any Event, Is Not Cognizable In This Federal Habeas Proceeding**

In Ground Three of the petition, petitioner essentially alleges that the Ohio Court of Appeals' denial on November 30, 2011 of his motion under Ohio R. App. P. 5 for leave to file a delayed appeal violated his right to due process. (Doc. 1, p. 9).

As an initial matter, it is clear from the record that petitioner has waived this ground for relief, which he failed to exhaust in the state courts. Petitioner has conceded in the petition that he never presented the claim to the state courts for their consideration. (*See id.*, p. 10). He suggests that he was unable to raise the claim in the underlying proceeding on his delayed appeal motion because the claim did not arise until the Ohio Court of Appeals denied the motion and refused to grant him an appeal. (*Id.*). However, petitioner could have presented the claim on further appeal to the Ohio Supreme Court. Therefore, in addition to the claims alleged in Grounds One and Two, petitioner procedurally defaulted the issue presented in Ground Three, when he failed to perfect a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' challenged decision. As discussed above with respect to Grounds One and Two, the Ohio Supreme Court relied on petitioner's procedural default, which constituted an adequate and independent basis for the court's decision, when it denied his motion for delayed appeal. *See supra* pp. 29-30; *see also Bonilla*, 370 F.3d at 497. Moreover, as discussed above with respect to Grounds One and Two, petitioner has not demonstrated cause for his failure to perfect a timely appeal to the state supreme court, nor has he shown that a fundamental miscarriage of justice will occur based on a showing of actual innocence if the claim alleged in Ground Three is not considered herein. *See supra* pp. 30-31; *see also Schlup,* 513 U.S. at 327; *Murray,* 477 U.S. at

32

495-96; *Bonilla,* 370 F.3d at 498.

In any event, petitioner has not alleged a constitutional claim in Ground Three that may be considered by this Court on federal habeas review of his state criminal conviction and sentence. The Sixth Circuit has held that "habeas corpus is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings." *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir. 2001) (citing *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986)).  Federal habeas review is not available to attack the legality of post-conviction proceedings because such proceedings are not related to a petitioner's detention.  *Kirby,* 794 F.2d at 247; *see also Cress v. Palmer,* 484 F.3d 844, 853 (6th Cir. 2007); *Alley v. Bell,* 307 F.3d 380, 387 (6th Cir. 2002). Petitioner's claim "must directly dispute the fact or duration of the confinement." *Kirby,* 794 F.2d at 248 (citing *Prieser v. Rodriguez*, 411 U.S. 475, 500 (1973)).  A ground for relief that challenges the correctness of a state judicial proceeding and does not dispute the detention itself is not cognizable. *See Kirby,* 794 F.2d at 247-48; *cf. Fikes v. Warden, Warren Corr. Inst.*, No. 1:10cv21, 2012 WL 404768, at *2, *5 (S.D. Ohio Feb. 8, 2012) (Spiegel, J.) (adopting the magistrate judge's Report and Recommendation, which included the recommendation that one of petitioner's claims merely challenging the correctness of an Ohio appellate court ruling should be dismissed because it did not state a cognizable ground for relief).  Habeas courts have rejected claims challenging the Ohio Court of Appeals' denial of delayed appeal motions under Ohio R. App. P. 5 on the ground that such claims address a collateral matter that is unrelated to the petitioner's detention. *See, e.g., Kelley v. Brunsman,* 625 F. Supp.2d 586, 598-99 (S.D. Ohio 2009); *Jones v. Warden, Chillicothe Corr. Inst.,* No. 1:07cv349, 2008 WL 618639, at *1, *7 (S.D. Ohio Feb. 29, 2008) (Dlott, J.; Black, M.J.); *Korbel v. Jeffreys,* No. 2:06cv625, 2007 WL

33

3146248, at *3 (S.D. Ohio Oct. 24, 2007) (King, M.J.) (Report & Recommendation), *adopted*, 2008 WL 207932 (S.D. Ohio Jan. 24, 2008) (Marbley, J.).  Therefore, to the extent that petitioner seeks to assert such a claim in this action, it does not constitute a cognizable ground for federal habeas relief.

Furthermore, to the extent that petitioner raises only a state-law issue based on the state appellate court's alleged error under standards set forth in Ohio R. App. P. 5, he has failed to state a cognizable ground for federal habeas relief.  A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").

Finally, although petitioner generally alleges he was denied due process by the state appellate court's ruling, his allegations do not implicate federal constitutional concerns under the Due Process Clause. The decision whether to grant or deny a motion for delayed appeal under Ohio R. App. P. 5 is solely within the discretion of the Ohio Court of Appeals. *See, e.g., Granger v. Hurt*, 215 F. App'x 485, 494-95 (6th Cir. 2007); *Kelley,* 625 F. Supp.2d at 599; *see also Stone v. Moore*, 644 F.3d 342, 347-48 (6th Cir. 2011) (acknowledging in accordance with *Dietz v. Money*, 391 F.3d 804, 810-11 (6th Cir. 2004), that the Ohio appellate court has "broad discretion" under Ohio R. App. P. 5 to grant or deny a delayed appeal). In *Granger,* the Sixth Circuit expressly rejected the contention that due process concerns were implicated by the Ohio appellate court's denial of a delayed appeal motion despite the petitioner's compliance with the

34

requirements of Ohio R. App. P. 5. *See Granger*, 215 F. App'x at 494-95. In so ruling, the court

reasoned: "If a criminal defendant were automatically granted leave to appeal by merely filing

the proper motion and setting forth any reason, "state court judgments would never attain finality

because they would always be subject to reconsideration on a motion for a delayed appeal." *Id.* at

495 (internal citation and quotation omitted).

Similarly, in this case, the Ohio Court of Appeals' denial of petitioner's motion for leave

to file a delayed appeal does not, in itself, amount to a violation of due process. *Cf. Kelley,* 625 F.

Supp.2d at 599; *Jones, supra*, 2008 WL 618639, at *8; *see also Rettig v. Jefferys*, 557 F. Supp.2d

830, 842 (N.D. Ohio 2008). Although constitutional concerns are implicated when a criminal

defendant is denied an appeal as of right under Ohio R. App. P. 4 because he lacked knowledge of

that right or because his attorney disregarded his request to file a timely appeal, *see Hall v. Yanai*,

197 F. App'x 459, 460 (6th Cir. 2006) (per curiam); *Jacobs v. Mohr*, 265 F.3d 407, 419 (6th Cir.

2001), petitioner has made no such claim over the course of the many years since his conviction

and sentence in 2001. Indeed, it is clear from the plea entry that was entered on the record in

April 2001 that petitioner was fully informed and aware of his appeal rights, including the fact

that "any appeal must be filed within 30 days of . . . sentence." (*See* Doc. 8, Ex. 2). Therefore,

petitioner's claim merely challenging the Ohio Court of Appeals' discretionary decision to deny

his delayed appeal motion fails to trigger constitutional concerns that may be reviewed by this

Court.

Accordingly, in sum, although the claim alleged in Ground Three is not time-barred, the

undersigned concludes that Ground Three is subject to dismissal with prejudice and that a hearing

in the matter is not necessary to resolve the procedural issues presented in respondent's motion to

dismiss. It is clear from the record presented that (1) petitioner procedurally defaulted the claim alleged in Ground Three in the state courts, and has not satisfied the "cause and prejudice" or "fundamental miscarriage of justice" standards for excusing the procedural bar to review; and (2) in any event, petitioner's allegation of error by the Ohio Court of Appeals in denying his delayed appeal motion under Ohio R. App. P. 5 does not give rise to a cognizable constitutional claim subject to review in this federal habeas proceeding.

### IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 8) be **GRANTED**, petitioner's motion for hearing (Doc. 10) be **DENIED**, and petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DISMISSED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims for relief alleged in the petition, which this Court has concluded are all barred from review on procedural grounds, because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural rulings or whether petitioner has stated a viable constitutional claim in any of his grounds for relief.[6]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting

---

[6] It is noted that as discussed above, Ground Three does not give rise to a cognizable ground for federal habeas relief. Moreover, the undersigned could find no support in the record for the claims alleged in Grounds One and Two because, to the contrary, it appears that the 18-year sentence imposed in 2001 for three separate rape offenses did not exceed the maximum sentence permitted by state law and was properly determined in accordance with the law in effect at that time.

this Report and Recommendation would not be taken in "good faith," and therefore **DENY**

petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R.

App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 1/24/13

Karen L. Litkovitz
United States Magistrate Judge

37

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

TERRENCE QUILLEN,                        Case No. 1:12-cv-160
     Petitioner,

                                      Barrett, J.
     vs                                  Litkovitz, M.J.

WARDEN, MARION
CORRECTIONAL INSTITUTION,
     Respondent.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

cbc

38

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☑ Agent
☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Terrence Quillen #412-908
Marion Corr. Inst.
PO Box 57
Marion, Ohio 43301-0057

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)

7011 3500 0001 5345 5109

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540