**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TERRENCE QUILLEN,                                          CASE NO.: 1:12-cv-160

              Petitioner,                                 Barrett, J.

      v.                                                         Litkovitz, M.J.

WARDEN, MARION CORRECTIONAL
INSTITUTION,

              Respondent.


**<u>OPINION AND ORDER</u>**

      This matter is before the Court on the Magistrate Judge's Report and Recommendation ("Report").  (Doc. 11).[1]  In the Report, the Magistrate Judge recommends that the Respondent's Motion to Dismiss (Doc. 8) be granted, Petitioner's Motion for Hearing (Doc. 10) be denied, Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be dismissed with prejudice, Petitioner be denied a certificate of appealability, and Petitioner be denied leave to appeal *in forma pauperis* upon a showing of financial necessity.  (Doc. 11, pp. 36-37).

      The parties were given proper notice pursuant to Federal Rule of Civil Procedure 72(b), including notice that the parties may waive further appeal if they fail to file objections in a timely manner.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).[2]  After being granted an extension of time, Petitioner has filed timely objections to the Report.  (Doc. 17).

---

[1]All document citations are to the Court's docket entry numbers.

[2]Notice was attached to the Report.  (Doc. 11, p. 38).

## I.    BACKGROUND

The procedural background and the pertinent facts have been thoroughly and adequately summarized in the Report (*see* Doc. 11), and thus, will not be repeated here.  However, the Court will identify the facts relevant to its decision when addressing Petitioner's Objections below.

## II.    STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are received on a dispositive matter, the assigned district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*; *see also* 28 U.S.C. § 636(b)(1).  General objections are insufficient to preserve any issues for review:  "[a] general objection to the entirety of the Magistrate [Judge]'s report has the same effect as would a failure to object."  *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Nevertheless, the objections of a petitioner appearing *pro se* will be construed liberally. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 251 (1976)).

## III.    ANALYSIS

The Magistrate Judge concluded that Grounds One and Two of Petitioner's Petition was time-barred, or in the alternative were waived due to procedural default. (Doc. 11, pp. 8-31).  The Magistrate Judge completed a detailed analysis under *Burton v. Stewart*, 549 U.S. 147, 127 S. Ct. 793, 166 L. Ed. 2d 628 (2007) and *Rashad v.*

*Lafler*, 675 F.3d 564 (6th Cir. 2012). (*Id.* at 12-21). The Magistrate Judge explained that the issue was whether two *nunc pro tunc* modifications to Petitioner's sentence, which did not impact Petitioner's underlying convictions or the terms of imprisonment imposed for those convictions, amounted to a "new" sentence that re-triggered the running of the § 2244(d)(1)(A) statute of limitations. (*Id.*). The Magistrate Judge found that "[c]ourts confronted with the question whether a modification to a sentence, as opposed to a resentencing, restarts the § 2244(d)(1)(A) limitations period have rejected the argument that *any* modification to a sentence results in a 'new' judgment for statute of limitations purposes." (*Id.* at 16). The Magistrate Judge further explained that "courts have held that a trial court's *nunc pro tunc* judgment entry to correct a technical or clerical error in the original sentence does not constitute a new judgment of sentence that restarts the running of the § 2244(d)(1)(A) statute of limitations." (*Id.* at 17). The Magistrate Judge also pointed out that in at least one case directly on point, a federal district court in Ohio "rejected the petitioner's objections and upheld the magistrate judge's recommended ruling that a *nunc pro tunc* sentencing entry filed after a re-sentencing hearing to inform the petitioner, who had been convicted and sentenced three years earlier upon entry of a guilty plea, that he was subject to a five-year mandatory term of post-release control, as opposed to a mandatory term 'for up to a maximum period of five years' as set forth in the original sentencing entry, 'did not substantially alter the original judgment entry' and, therefore, did not affect the finality of that judgment for federal habeas statute of limitations purposes." (Doc. 11, p. 18) (citing *Davis v. Coleman*, No. 5:11cv996, 2012 WL 5385209, at *2 (N.D. Ohio Nov. 1, 2012), *affirming and* adopting, 2012 WL 967300, at *4-7 (N.D. Ohio Mar. 6, 2012) (Report &

Recommendation)).  The Magistrate Judge therefore concluded that the modifications to Petitioner's sentence in 2007 and 2010 did not affect the finality of the judgment of conviction and sentence challenged by Petitioner in the instant action, which was entered on June 13, 2001 when he was convicted and sentenced upon entry of his guilty plea.  (*Id.* at 21).

Based on this conclusion, the Magistrate Judge found that the statute of limitations for the claims asserted in the Petition began to run on July 14, 2001, a day after June 13, 2001 judgment became "final" by the expiration of the 30-day period for filing a timely appeal as of right to the Ohio Court of Appeals.  (*Id.*) After applying statutory tolling principles in Petitioner's favor, the Magistrate Judge concluded that the limitations period expired on July 14, 2002.  (*Id.* at 21-22) The Magistrate Judge also concluded that Petitioner has not demonstrated that he is entitled to equitable tolling. (*Id.* at 22-24).

The Magistrate Judge went on to find that in the alternative, Grounds One and Two should be dismissed because Petitioner procedurally defaulted on those claims. (*Id.* at 24-31).  She determined that Petitioner had not established cause and actual prejudice, or that a fundamental miscarriage of justice would result from a failure to consider the claims.  (*Id.* at 30-31).

As to Ground Three, the Magistrate Judge recommends its dismissal for four reasons.  (*Id.* at 32-36).  First, Petitioner procedurally defaulted on his claims without showing cause or a fundamental miscarriage of justice when he failed to exhaust his state court remedies on the issue by not presenting it to the state courts at all for their consideration.  (*Id.* at 32).  Second, "[i]n any event, petitioner has not alleged a

constitutional claim in Ground Three that may be considered by this Court on federal habeas review of his state criminal conviction and sentence" to the extent it relates to collateral matters unrelated to his detention.  (*Id*. at 33).  Third, "to the extent that petitioner raises only a state-law issued based on the state appellate court's alleged error under standards set forth in Ohio R. App. P. 5, he has failed to state a cognizable ground for federal habeas relief."  (*Id*. at 34).  Fourth, his allegations do not implicate federal constitutional concerns under the Due Process Clause because the "decision whether to grant or deny a motion for delayed appeal under Ohio R. App. P. 5 is solely within the discretion of the Ohio Court of Appeals."  (*Id*.)

The Court infers that Petitioner intends to assert twelve separate objections to the Report.  (Doc. 17).  Each of those objections will be addressed separately below.

## A.    <u>First Objection</u>

At the outset of Petitioner's objections, he contends he is "entitled to redress in this Federal Court" and he has been deprived of "Federal Liberty interest created by Ohio Law per *Hicks v. Oklahoma*, 447 U.S. 343 (1980), based on NEW CHANGES in Ohio Laws as explained in *State v. Ahmed*, Case No. CR-437437 (Attached)[.]"  (Doc. 17, p. 1).

*Ahmed* is a case from the Cuyahoga County, Ohio Court of Common Pleas.  (*See* Doc. 17-1).  The defendant in that case was originally sentenced on February 18, 2004 to 10 years of imprisonment on two rape counts, 5 years of imprisonment on five of the sexual battery counts, and 60 days of imprisonment on multiple sexual imposition counts.  (Doc. 17-1, "Opinion," p. 1).  The sentences for the rape counts and sexual battery counts were to run consecutively for a total prison sentence of 45 years.  (*Id*.).

The sentence for the sexual imposition counts were to run concurrently to the prison sentence.  (*Id.*, "Opinion," pp. 1-2).  On July 27, 2005, the Eighth District Court of Appeals affirmed the defendant's convictions but vacated his sentence.  (*Id.*, "Opinion," p. 2).  In doing so, it remanded the matter for resentencing, holding that the trial court's findings were not sufficient to warrant the imposition of consecutive sentences pursuant to Ohio Rev. Code § 2929.14(E)(4), which required findings of fact to be set forth by the trial court to support the consecutive sentences.  (*Id.*)  On remand, the defendant filed a motion to stay his resentencing pending the decision of the Ohio Supreme Court in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006).  (*Id.*)  The trial court granted the stay.  (*Id.*)

On February 28, 2006, the Ohio Supreme Court held that Ohio Rev. Code § 2929.14(E)(4) was unconstitutional, reasoning that the findings required by statute violated a defendant's right to a jury trial as defined in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).  *See Foster*, 845 N.E.2d at 478-500; *see also* (Doc. 17-1, "Opinion," p. 2).  In other words, the Ohio Supreme Court determined that fact finding in support of consecutive sentences was not required, and indeed, was unconstitutional.  *Foster*, 845 N.E.2d at 478-500; *see also* (Doc. 17-1, "Opinion," p. 2).  In light of *Foster*, the *Ahmed* trial court resentenced the defendant on May 23, 2006 to consecutive sentences for a total of 45 years without making any findings of fact.  (Doc. 17-1, "Opinion," p. 2).

In January 2008, the United States Supreme Court stated that contrary to the holding of the Ohio Supreme Court in *Foster*, there was no constitutional bar to a legislature's requiring judges to make findings of fact before imposing consecutive sentences.  *Oregon v. Ice*, 129 S. Ct. 711 (2009).  On June 29, 2011, the Governor

signed H.B. 86 into law, which became effective on September 30, 2011, and which revived the requirement that judges make findings of fact before imposing consecutive sentences as originally required by Ohio Rev. Code § 2929.14(E)(4).  *See* 2011 Ohio H.B. 86; Ohio Rev. Code § 2929.14(E)(4); (Doc. 17-1, "Opinion," p. 2).

Based on the foregoing, the defendant in *Ahmed* argued that he was deprived of his due process liberty interest in being sentenced according to the sentencing procedure pursuant to *Hicks v. Oklahoma*, 447 U.S. 343 (1980), which made his May 23, 2006 sentencing void and entitled him to a *de novo* resentencing.  (Doc. 17-1, "Opinion," pp. 2-3).  In reaching that decision, the trial court noted that the defendant was in a unique position because "but for the incorrect decision in *Foster*, [the] [d]efendant would have been entitled to concurrent sentences at his resentencing, unless the trial court made findings of fact and gave supporting reasons sufficient to impose consecutive sentences."  (Doc. 17-1, "Opinion," p. 2).

In the Report, the Magistrate Judge considered the issue of *Foster* when addressing the statute of limitations and whether, or to what extent, Petitioner could rely on 28 U.S.C. § 2254(d)(1)(C), which provides that a person in custody pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of ". . . the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable on collateral review."  (Doc. 11, p. 9 n. 3).  The Magistrate Judge noted:

> Petitioner is unable to prevail on any claim that § 2244(d)(1)[(]C) applies to the extent he has argued that in determining his 18-year sentence in 2001, the trial court violated his Sixth Amendment jury-trial right in light of the Supreme Court's subsequent decisions in

> *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005), as well as the Ohio Supreme Court's even later decision in *State v. Foster*, 845 N.E.2d 470 (Ohio 2006). (*See* Doc. 8, Ex. 9, "Memorandum in Support," pp. 7-8).  It is well-settled that *Blakely*, *Booker* and *Foster* do not retroactively apply to delay the limitations period under § 2244(d)(1)(C) in a collateral review proceeding such as this given that the petitioner's conviction and sentence became final before those decisions were rendered. *See, e.g.*, *Snead v. Warden, Madison Corr. Inst.*, No. 1:11-cv-127, 2011 WL 6817872, at *9 (S.D. Ohio Dec. 29, 2011) (Litkovitz, M.J.) (Report & Recommendation) (and numerous cases cited therein), *adopted*, 2012 WL 3835105 (S.D. Ohio Sep. 4, 2012) (Spiegel, J.).

(Doc. 11, p. 9 n. 2).

Petitioner's objections are construed in light of the above section of the Magistrate Judge's Report.  The Court therefore infers that Petitioner intends to argue that the statute of limitations should have been delayed under § 2244(d)(1)(C) due to the "change in law" as set forth in *Foster,* or in *Ice* as later effectuated in Ohio through H.B. 86.

As an initial matter, the Court notes its agreement with the Magistrate Judge that Petitioner's convictions became final on July 13, 2001 with the statute of limitations expiring one year later on July 14, 2002.  (*See* Doc. 11, pp. 22, 24).[3]

The Court now turns to the objections.  With regard to the change in law that took place as a result of the *Foster* decision, the Court agrees with the Magistrate Judge's reasoning and conclusion that neither the Ohio Supreme Court's decision in *Foster* nor the prior decisions of the United States Supreme Court in *Blakely* and *Booker* retroactively apply to delay the limitations period under § 2244(d)(1)(C) in this collateral review proceeding, as those decisions were rendered several years after Petitioner's

---

[3]The Court recognizes that Petitioner challenges this conclusion in later objections, and the Court will address those challenges later in this Opinion and Order.  However, as the Court will herein explain, this objections do not alter the Magistrate Judge's conclusion on this issue.

convictions and sentence became final.  (*See* Doc. 11, p. 9 n. 2).  As to the changes in the law post-*Foster*, specifically the *Ice* decision as implemented through H.B. 86, they likewise occurred years after Petitioner's convictions and sentence became final.  At the time that change in law occurred, Petitioner was not in the "unique" position of the defendant in *Ahmed*.  Specifically, unlike the *Ahmed* defendant, Petitioner had not been resentenced to consecutive sentences without fact-finding in light of *Foster* even though at the time of his original sentence and at the time that original sentence was vacated he had been entitled to such fact-finding.  Accordingly, the change in law referenced by Petitioner in his objections does not apply to delay the limitations period under § 2244(d)(1)(C) in this case.  *See State v. Hodges*, 941 N.E.2d 768 (Ohio 2010) (holding that *Ice* did not revive the statutory provisions invalidated in *Foster*, that defendants who were sentenced by trial judges who did not apply those provisions are not entitled to resentencing, and that the General Assembly was no longer constrained by *Foster* regarding the constitutionality of the consecutive-sentencing provisions and could, if it chose to do so, respond with an enactment of a statutory provision in light of *Ice*'s holding), *cert. denied*, 131 S. Ct. 3063 (2011).[4]

For each of the foregoing reason, the Court overrules Petitioner's first objection.

**B.    Second Objection**

Petitioner's next objection is listed on Page 2 under "Objections:  Statements of Facts and Legal Claims[,]" and provides:  "1.) Page 7 see Footnote 2 (missing evidence

---

[4]Furthermore, H.B. 86 does not constitute an initial recognition by the United States Supreme Court of a new constitutional right; rather, it is a state bill intended to, as the *Ahmed* court recognized, revive the procedures in Ohio Rev. Code § 2929.14 that were used prior to the *Foster* decision in 2004, and in any event, H.B. 86 has been held not to be retroactive, *see State v. Brown*, No. 11CA42, 2012 Ohio App. LEXIS 2355, at *18 (Richland App. June 13, 2012) (citing *State v. Fields*, No. CT11-0037, 2011 Ohio App. LEXIS 4926, at *2-3 (Muskingum App. Nov. 21, 2011)).

from petition Ex. (A).  (Evidentiary hearing requested)."  (Doc. 17, p. 2).  The reference to which he cites is the Magistrate Judge's footnote that provides:

> Petitioner states in the petition that the facts supporting his first two grounds for relief are set forth in "Attachment 'A'."  (See Doc. 1, pp. 6, 8). However, the only attachment to the petition is the completed civil cover sheet that petitioner submitted when filing the action in the Northern District of Ohio.  The attached cover sheet does not mention any "supporting facts" or otherwise make any reference to petitioner's claims.

(Doc. 11, p. 7, n. 2).  The Magistrate Judge made that notation in her factual explanation of the federal habeas petition as she was outlining the three grounds for relief and supporting facts asserted by Petitioner.  (Doc. 11, p. 7).

After reviewing the Magistrate Judge's statement and the federal habeas petition referenced, the Court finds that the Magistrate Judge was correct in noting that there is no "Attachment 'A'" or an equivalent statement of supporting facts attached to, contained within, or otherwise filed in conjunction with the Petition.  (See Doc. 1).  In any event, that footnote by the Magistrate Judge was not outcome determinative, and Petitioner has had adequate opportunities in his Response to the Motion to Dismiss and in these objections to provide the Court with the relevant facts upon which he relies or to, at a minimum, explain to the Court why such relevant facts have not been provided. To the extent he has done so, the Court will consider those facts and objections herein where appropriate. Nevertheless, since the second objection relates to a collateral issue correctly addressed by the Magistrate Judge in a footnote and is not outcome determinative, the Court overrules the second objection.

### C.    <u>Third Objection</u>

Petitioner's third objection is as follows:  "2.) Page 11 Judg[]ment of District Court that Mr. Quillen[']s Common Pleas Court Judg[]ment became final on July 13, 2001 is

erroneous. [S]ee page 12."  (Doc. 17, p. 2).  On page 11 of the Report, the Magistrate Judge states:  "Here, it appears that petitioner's conviction became final on July 13, 2001, when the 30-day period expired for filing an appeal as of right to the Ohio Court of Appeals from the trial court's June 13, 2001 sentencing entry."  (Doc. 11, p. 11).  The Magistrate Judge goes on to conclude on page 11 and part of page 12 that Petitioner's unsuccessful September 2011 motion for leave to file a delayed appeal to the Ohio Court of Appeals and his unsuccessful March 2012 motion for leave to file a delayed appeal to the Ohio Supreme Court did not restart the running of the statute of limitations under § 2244(d)(1)(A), but rather could only serve to toll an unexpired limitations period under § 2244(d)(1)(A).  (*Id.*)

The Court construes Petitioner's objection as relating to whether his delayed appeal restarted the running of the statute of limitations under § 2244(d)(1)(A).  Having reviewed the analysis of the Magistrate Judge in light of this objection, the Court finds the Magistrate Judge's conclusion to be correct.  As the Magistrate Judge correctly found (Doc. 11, p. 11), the delayed appeals, which were both denied, did not restart the running of the statute of limitations under § 2244(d)(1)(A).  *See Sayles v. Warden*, No. 1:11cv5234, 2012 U.S. Dist. LEXIS 115113, at *12-13 n.1 (S.D. Ohio July 17, 2012) (Wehrman, M.J. (Report and Recommendation) (citing relevant caselaw), *adopted*, 2012 U.S. Dist. LEXIS 114747 (S.D. Ohio Aug. 15, 2012) (Dlott, J.); *Little v.* Warden, No. 1:10cv468, No. 1:10cv468, 2011 U.S. Dist. LEXIS 613436, at *11-12 n.2 (S.D. Ohio May 16, 2011) (Litkovitz, M.J.) (Report & Recommendation), *adopted*, 2011 U.S. Dist. LEXIS 61362 (S.D. Ohio June 9, 2011) (Bertelsman, J.).  Nor could they be relied upon to toll any unexpired limitations period, as they were filed in September 2011 and March

2012, respectively, which is more than nine years after Petitioner's one-year statute of limitations under § 2244(d)(1) had expired.  *See Sayles*, 2012 U.S. Dist. LEXIS 115113, at *12-13 n.1, *adopted*, 2012 U.S. Dist. LEXIS 114747; *Little*, 2011 U.S. Dist. LEXIS 613436, at *11-12 n. 2, *adopted*, 2011 U.S. Dist. LEXIS 61362.  Accordingly, Petitioner's third objection is overruled.

      **D.**    **Fourth Objection**

      Petitioner's Fourth objection relates to the Magistrate Judge's discussion at page 12 of the Report regarding the Supreme Court's decision *Burton v. Stewart*, 549 U.S. 147 (2007) (per curiam), and the Sixth Circuit's decision in *Rashad v. Lafler*, 675 F.3d 564 (6th Cir. 2012).  (Doc. 17, p. 3; *see also* Doc. 11, p. 12).  Specifically, Petitioner provides:  "Page 12:  The Supreme Court decision in *B[u]rton v. Stewart*, 549 U.S. 147 (2007) (per curiam), and 6th Circuit in *Rashad v. Lafler*, 675 F.3d 564 [(6th Cir. 2012)], the Statute-of-Limitations clock was restarted when the trial court issued Nunc Pro Tunc Amendment to the Sentencing Entry to correct errors regarding Jail-Time Credit and Post-Release Control."  (Doc. 17, p. 2).  Based on that unclear objection, the Court infers that Petitioner intends to argue that pursuant to *Burton* and *Stewart* the Court should find that the statute of limitations restarted at the time the *nunc pro tunc* entries were made by the trial court in 2007 and 2012.

      Having reviewed Petitioner's objections in light of *Burton* and *Rashad*, the Court finds that the Magistrate Judge was correct and thorough in her analysis of those two cases.  (Doc. 11, p. 12-16).  As the Magistrate Judge recognized, neither *Burton* nor *Rashad* are directly on point, and cases following in the wake of *Burton* and *Rashad* demonstrate that courts examine the surrounding circumstances to determine whether a

sentence modification should be considered equivalent to a resentencing that restarts the running of the clock and at least one federal court in Ohio has found in an analogous case that that the *nunc pro tunc* modifications do not affect the finality of a judgment of conviction and sentence. (Doc. 11, p.p. 12-21). As such, the *nun pro tunc* modifications made in 2007 and 2012 to Petitioner's sentence would not affect the finality of the judgment of conviction and sentence challenged by Petitioner, which was entered on June 13, 2001 when he was convicted and sentenced upon entry of his guilty plea. (*See id.*) Accordingly, Petitioner's fourth objection is overruled.

### E.    Fifth Objection

Similar to the fourth objection, Petitioner's fifth objection relates to the Magistrate Judge's interpretation of *Rashad*, 675 F.3d at 566-68. (Doc. 17, p. 2). Specifically, he indicates: "Pages 14-15, *Rashad*, 675 F.3d at 566-567-68 analysis is authority in Mr. Quillen's case that the AEDPA Statute-of Limitations Time Clock was rest on 10-9-2012 with the resentencing order for void (PRC) and Nunc Pro Tunc Jail-Time Credit Sentence." (Doc. 17, p. 2). With respect to this objection, the Court incorporates here its above analysis in the fourth objection. For the reasons set forth in that analysis, the Court overrules Petitioner's fifth objection.

### F.    Sixth Objection

Petitioner's sixth objection is the following:  "Page 16, the Magistrate Judge abuses her discretion at Paragraph 3 in ruling: 'However, unlike *Rashad*, petitioner does not raise any claims in the instant action on issues that resulted in the later recalculation of Jail-Time Credit and notification to petition.'" (Doc. 17, p. 2). He then goes on to state that he was re-sentenced only a short time ago, and his October 9, 2012 judgment

is on direct appeal in the Twelfth Appellate District, Case No. CA-2012-10-0217. (*Id.* at 2-3).

Petitioner correctly states that he filed an appeal on October 31, 2012 with the Twelfth District Court of Appeals for Butler County, Ohio in which he challenges the post-release control and the jail-time credit. *See State v. Quillen*, No. CA2012-10-0217 (Butler App. Dist.). That appeal appears to be from an October 16, 2012 *nunc pro tunc* entry, which amends the imposition of his post release control and which also notes that he is entitled to certain jail-time credit. *See State v. Quillen,* No. CR2000-03-0306 (Butler Cty. C.P. Oct. 16, 2012). In the appeal, Petitioner filed his brief on February 14, 2013, Respondent filed its opposition brief on March 12, 2013, and the Petitioner filed his reply brief on March 26, 2013. *See State v. Quillen*, No. CA2012-10-0217 (Butler App. Dist.). The Court also agrees with Petitioner that at the time he filed the Petition in this case on February 13, 2012, he was not aware that the October 16, 2012 entry would come to pass.

However, in light of those facts, the Court agrees with Magistrate Judge that Petitioner has not raised any claims in the instant habeas proceeding on issues that resulted in the later recalculation of his jail-time credit and notification to Petitioner that he was subject to a five-year mandatory term of post-release control. (*See* Doc. 11, p. 16). Rather, those issues are raised in the Magistrate Judge's Report only to the extent the *nunc pro tunc* entries needed to be considered to determine that the statute of limitations as to Grounds One and Two were not restarted.

For the foregoing reasons, Petitioner's sixth objection is overruled.

### G.    Seventh Objection

14

Petitioner's seventh objection is the following:  "[C]ontrary to the statements of the Magistrate Judge on page 16 at ¶ 3, quoted here:  'Therefore, the question posed here is whether the uncontested Nunc Pro Tunc modifications to petitioner's sentence, which did not impact petitioner's underlying conviction . . . .'"  (Doc. 17, p. 3).

The Court has difficulty distinguishing this objection from Petitioner's fourth and fifth objection.  It appears to the Court that he is raising the same dispute herein that he already has raised.  Specifically, this objection appears to the Court to again call into question the Magistrate Judge's analysis of *Burton* and *Rashad* and the cases following in their wake.  Accordingly, the Court incorporates here its analysis above with respect to Petitioner's fourth and fifth objection.

To the extent Petitioner intends to argue that the *nunc pro tunc* modifications actually did impact his underlying conviction on three counts of rape or the aggregate 18-year sentence imposed for those offenses, he has set forth no explanation showing and no facts from which the Court can reasonably interpret to suggest that the underlying conviction or 18-year sentence was impacted.  Having reviewed the facts and law relevant to the case, the Court agrees with the Magistrate Judge's statement that the *nunc pro tunc* modifications did not impact his underlying conviction or the aggregate 18 year sentence.

 For the foregoing reasons, the Court overrules Petitioner's seventh objection.

## H.   <u>Eighth Objection</u>

In his eighth objection, Petitioner again references the cases *Burton*, 549 U.S. 147, and *Rashad*, 675 F.3d 564.  (Doc. 17, p. 3).  Specifically, he relies on *Rashad*'s discussion of a single judgment for claims relating to the conviction and sentence.  (*Id.*)

15

He further references *Burton* in regards to judgment meaning one sentence and how having different cases for a sentence and a conviction would require petitioners to comply with different limitations clocks and would not streamline federal habeas proceedings. (*Id.*) He appears to argue that the limitations clock should begin after the "new sentence." (*Id.* at 4). Moreover, he cites to the Magistrate Judge's reasoning with respect to *Bachman*, 487 F.3d 979, contending it does not provide valid authority because the designation of sexual predator under Ohio law is no longer considered a remedial law as shown by *State v. Raber*, 982 N.E.2d 684 (Ohio 2012).

The Court infers that Petitioner intends to argue that his judgment was not finalized as a final judgment prior to the *nunc pro tunc* entries modifying the sentence as to post-release control and/or jail-time credit. However, as the Magistrate Judge noted, courts examine the surrounding circumstances to determine whether a sentence modification should be considered equivalent to a resentencing that restarts the running of the clock. The Court finds that the Magistrate Judge properly analyzed the caselaw regarding modifications to a sentence and *nunc pro tunc* entries to correct a technical or clerical error. Accordingly, under the caselaw cited by the Magistrate Judge, the modifications to Petitioner's sentence did not constitute a new judgment of sentence that restarts the statute of limitations under Section 2244(d)(1)(A) for the entire underlying judgment of conviction and sentence.

As for *Bachman*, the Court agrees with Petitioner to the extent he intends to argue that *Bachman* is not directly on point with this case such that the Court should not rely upon its conclusion that the modification of that defendant's sentence restarted the statute of limitations clock for the modification only and not with respect to challenges to

16

his underlying conviction.  *See Bachman*, 487 F.3d at 983.  As the Magistrate Judge correctly noted, *Bachman* involved the question of whether the statute of limitations on the original judgment began anew based on a sexual predator determination made by the trial court years after the petitioner's underlying conviction and sentence had been affirmed on direct appeal.  *Bachman*, 487 F.3d at 983.  In *Bachman*, the petitioner's "designation as a sexual predator started the running of a ne[w] statute of limitations period with respect to challenges to the sexual predator designation *only*—not with respect to challenges to his underlying conviction."  *Id.* at 983 (footnote omitted).

Here, the issue arising after Petitioner's sentence and conviction became final is not related to a new sexual predator determination made years after the final judgment, but is instead related to decisions in 2007 and 2012 that resulted in *nunc pro tunc* entries modifying Petitioner's sentence that had become final years prior to the modifications.  *Bachman* therefore does not conclusively determine whether the statute of limitations on Petitioner's original judgment restarts at the time of the *nunc pro tunc* entries.  Nevertheless, the Magistrate Judge recognized that there are differences between *Bachman* and the present case, and she therefore further analyzed the issue of whether a *nunc pro tunc* modification could restart the statute of limitations.  Given that the Magistrate Judge's analysis was correct, the Court concludes that, as stated above, under the caselaw cited by the Magistrate Judge, the modifications to Petitioner's sentence did not constitute a new judgment of sentence that restarts the statute of limitations under Section 2244(d)(1)(A) for the entire underlying judgment of conviction and sentence.

Accordingly, Petitioner's eighth objection is overruled.

17

I.       **Ninth Objection**

Petitioner's ninth objection is that the Magistrate Judge abused her discretion in finding he had not demonstrated cause for his procedural default.  (Doc. 17, p. 5). Petitioner contends that he has demonstrated cause by asserting that is not a licensed attorney and that he used the same date the Ohio Supreme Court told him to use for filing his delayed appeal to the Ohio Supreme Court.  (Doc. 17, p. 5).

In the Report, the Magistrate Judge noted that even if Petitioner's claims in Grounds One and Two were not time barred, they were procedurally defaulted.  (Doc. 11, pp. 24-25).  She then indicated:

> Because petitioner failed to comply with a state procedural rule, which was relied upon by the Ohio Supreme Court in denying his motion for delayed appeal, the Ohio Supreme Court was not provided with an opportunity to consider the merits of petitioner's claims.  Therefore, this Court's review of the claims alleged in Grounds One and Two of the petition [are] barred unless petitioner "can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." [*Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991))].

(Doc. 11, p. 30).[5]  On the issue of "cause," the Magistrate Judge found that Petitioner had not established cause because his only argument justifying delay was that he was misinformed of the filing deadline date by the Ohio Supreme Court Clerk's office because the clerk informed Petitioner that February 14, 2012 was the deadline date of filing an appeal "[i]f he was appealing a December 31, 2011 decision" when the real deadline for his November 30, 2011 petition was January 14, 2012.  (Doc. 11, p. 30).

_____

[5]The Court notes that the Magistrate Judge concluded that Grounds One and Two should be dismissed based on the statute of limitations, or *in the alternative,* on the basis of procedural default. (*See* Doc. 11). Likewise, the Magistrate Judge concluded that Ground Three should be dismissed due to procedural default, *or* due to a failure to assert claims cognizable in this federal habeas corpus proceeding.  (Doc. 11, pp. 33-36).

She further noted that even if Petitioner was led to believe he had until February 14, 2012, he has not explained his 50-day delay in filing a motion for delayed appeal with the state supreme court after he was informed by the clerk's office on January 24, 2012 that the January 14, 2012 filing deadline had passed.  (Doc. 11, p. 31).  The Magistrate Judge reached the same conclusion with respect to Ground Three.  (Doc. 11, p. 32).

To establish cause, a habeas corpus petitioner must show that "'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule."  *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 494-95, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986)).  A petitioner's *pro se* status, his limited access to the prison law library, and his ignorance of the law and procedural requirements for filing a timely appeal are insufficient to establish cause. *Id.*  Here, Petitioner was not prevented from complying with a procedural rule by the letter from the deputy clerk.  The letter did not contain any misinformation about the deadlines, nor was Petitioner prevented from determining the deadline for appeal independently.  Accordingly, Petitioner has not shown the requisite "cause" for excusing the procedural bar, and his ninth objection is therefore overruled.

### J.      Tenth Objection

Petitioner's tenth objection relates to the Magistrate Judge's statement that Plaintiff did not show cause for why he waited 50 days to file his appeal after he was advised it was not timely filed.  (Doc. 17, p. 5).  He contends that he placed his Notice of Appeal in the prison mailroom but it took them 50 days to finally get it to the Ohio Supreme Court.  (Doc. 17, p. 5).

The Court previously has explained above the Magistrate Judge's conclusion as to "cause."  The Court therefore will not repeat that explanation in full here.  However, for clarity, it bears mentioning that the Magistrate Judge's precise conclusion on this issue was as follows: "In any event, even assuming for the sake of argument that petitioner was misled into believing that he had until February 14, 2012 to file a timely appeal, he has not explained his 50-day delay in filing a motion for delayed appeal with the state supreme court after he was informed by the clerk's office on January 24, 2012 that the January 14, 2012 filing deadline had passed."  (Doc. 11, pp. 30-31).

As the Court already has determined above that Petitioner has not demonstrated cause for his failure to file his appeal with the state supreme court within the requisite timeframe, a determination of "cause" based on the correctional institution's delay in sending his petition to the state supreme court for 50 days after this time already had expired would be immaterial and need not be decided here to find Petitioner's claims procedurally barred.[6]  Accordingly, Petitioner's tenth objection is overruled.

### K.    Eleventh Objection

Petitioner requests that the Court hold his pending habeas corpus proceeding in abeyance until he has the opportunity to fully present his claims to the state courts. (Doc. 17, pp. 1, 3, 6).  It appears that he requests this case be held in abeyance to allow him to now raise claims based on the change of law resulting from *Foster* and *Ice* as implemented in H.B. 86.  (*Id.*)  However, it also is possible that Petitioner is requesting the case be held in abeyance to allow him to finish his proceedings in his currently pending appeal in the state court.  (*See id.*)

---

[6]Again, the Court notes that the procedural bar is an alternative ground for dismissal for Grounds One, Two and Three.

A federal habeas petition may in certain circumstances be stayed so that a petitioner can return to the state courts to pursue an unexhausted claim for relief. The Supreme Court has held, however, that the district court's discretion to issue a stay is circumscribed to the extent it must "be compatible with AEDPA's purposes." *Rhines v. Weber*, 544 U.S. 269, 276 (2005). In *Rhines*, the Court pointed out that one of the AEDPA's purposes is to "reduce delays in the execution of state and federal criminal sentences" based on the "well-recognized interest in the finality of state judgments." *Id.* (quoting *Woodford v. Garceau*, 538 U.S. 202, 206, 123 S. Ct. 1398, 155 L. Ed. 2d 363 (2003), and *Duncan v. Walker*, 533 U.S. 167, 179, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001)). In addition, the AEDPA's statute of limitations tolling provision was intended to "reinforce[ ] the importance of *Lundy's* "simple and clear instruction to potential litigants: before you bring any claims in federal court, be sure that you first have taken each one to state court." *Id.* at 276-77 (quoting *Rose v. Lundy*, 455 U.S. 509, 520, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982)).

The Court went on to determine that:

> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . .

> For these reasons, stay and abeyance should be available only in limited circumstances.

*Id.* at 277.

The Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims

first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277-78.  On the other hand, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

In this case, the Magistrate Judge found, and this Court has agreed, that claims asserted in the Petition are time-barred, procedurally defaulted, and/or not cognizable in federal habeas corpus proceedings. The argument that Petitioner wants to now go back to the state courts to raise, is not a "claim" asserted in his Petition that has not been exhausted; instead, it relates to the issue raised by the Magistrate Judge as to whether the limitations clock should be restarted under § 2244(d)(1) due to the change in law in *Foster* and *Ice* as implemented under H.B. 86.  However, this Court already has concluded that his argument does not change the conclusion that the statute of limitations for his original convictions is not restarted under § 2244(d)(1).  Therefore, any further state court proceedings on this issue will not change the conclusion that Grounds One and Two are time-barred.  As such, holding the habeas corpus proceeding in abeyance as to that argument is not warranted.

As for the claims that are the subject of the appeal that is now pending before the Twelfth District Court of Appeals from the October 16, 2012 *nunc pro tunc* entry by the trial court, Petitioner has not asserted any claims for relief in his Petition that are

directed towards those claims.  Nor does the outcome of that state appellate case affect any of the claims asserted in the present habeas proceeding.  On those state appellate claims, Petitioner does not seek a stay so that he may exhaust an unexhausted claim contained in the Petition; rather, he seeks a stay to exhaust a new claim that he raised in the state courts *after* the petition in this case was filed.

As such, this is not a "mixed petition" case involving exhausted and unexhausted claims. *See generally Rhines*, 544 U.S. at 271. The Court is not required to stay a petition because the petitioner attempts to raise additional but unexhausted, and still pending, claims during the course of the habeas corpus proceedings.  *Jones v. Parke*, 734 F.2d 1142, 1145 (6th Cir. 1984).  Because this case does not involve a "mixed petition," the stay-and-abeyance procedure generally is inapplicable.

To the extent the stay and abeyance procedure may be applied outside of mixed petitions, the Court still does not find that the procedure is appropriately applied here. *Pace v. DiGuglielmo*, 544 U.S. 408, 416-17, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005); *see also Heleva v. Brooks*, 581 F.3d 187, 190-91 (3rd Cir. 2009).  While the Court recognizes that Petitioner may not have been able to assert some or all of the currently-pending claims in his original petition to the extent they arose after the Petition was filed, he has not sought to amend his petition and there is no indication that this petition was filed as a "protective petition" due to reasonable confusion regarding the statute of limitations as to his claims currently pending in state court.  It also is unclear to the Court what claim Petitioner would raise in a federal habeas corpus proceeding based on his resentencing for post-release control and the jail-time credit.  Therefore, this is not such a "limited circumstance" where stay and abeyance of the habeas corpus

23

proceeding should be available.  As such, Petitioner's request that the Court hold the Petition in abeyance while he pursues the state remedies is denied.

### L.    **Twelfth Objection**

Petitioner's twelfth objection is more of a request that an objection *per se*, as he asks that a public defender be appointed to represent him.  (Doc. 17, p. 7).  The Court may appoint legal counsel to financially eligible persons seeking habeas corpus under 28 U.S.C. §§ 2241, 2254, or 2255 when the Court determines that the "interests of justice so require."  18 U.S.C. § 3006A(a)(2).  The decision to appoint counsel is discretionary; a habeas petitioner has no constitutional or statutory right to appointed counsel.  *See Coleman v. Thompson*, 501 U.S. 722, 752-53, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002), *cert. denied*, 538 U.S. 984, 123 S. Ct. 1793, 155 L. Ed. 2d 677 (2003), *reh. denied*, 539 U.S. 970, 156 L. Ed. 2d 677, 123 S. Ct. 2666 (2003); *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986). The appointment of counsel is therefore required only if, given the difficulty of the case and petitioner's ability, the petitioner could not obtain justice without an attorney, he could not obtain a lawyer on his own, and he would have a reasonable chance of winning with the assistance of counsel.  *Lemeshko v. Wronai,* 325 F. Supp. 2d 778, 787 (E.D. Mich. 2004); *see also United States v. Pullen,* No. 4:08-CR-431, 2012 U.S. Dist. LEXIS 4543, at *3-5 (N.D. Ohio Jan. 13, 2012).  Appointment also may be justified if the prisoner acting *pro se* in the habeas corpus proceeding has made a colorable claim, but lacks the means to adequately investigate, prepare or present the claim. *Lemeshko,* 325 F. Supp. 2d at 788; *Pullen,* 2012 U.S. Dist. LEXIS 4543, at *4-5.

24

As discussed above and in the Report, Petitioner did not file his habeas corpus petition within the limitations period prescribed by § 2244(d), has procedurally defaulted and waived his claims, and/or has asserted claims not cognizable in this federal habeas corpus proceeding.  Accordingly, appointment of counsel is not warranted in this case.

## IV.    CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Petitioner's objections (Doc. 17) and **ADOPTS** the Magistrate Judge's Report (Doc. 11).  Consistent with the Report (Doc. 11) and this Opinion and Order, it is hereby **ORDERED** that:

1.      Respondent's motion to dismiss (Doc. 8) is GRANTED, Petitioner's motion for hearing (Doc. 10) is DENIED, and Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is DISMISSED with prejudice.

2.      A certificate of appealability should not issue with respect to the claims for relief alleged in the Petition, which the Court has concluded are all barred from review on procedural grounds, because under the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reasons" would not find it debatable whether the Court is correct in its procedural rulings or whether Petitioner has stated a viable constitutional claim in any of his grounds for relief.[7]

3.  With respect to any application by Petitioner to proceed on appeal *in forma pauperis*, the Court certifies that pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of this Opinion and Order adopting the Report would not be taken in "good faith" and therefore DENIES Petitioner leave to appeal *in forma pauperis* upon a showing of

---

[7]It is noted that as discussed above and in the Report, Ground Three does not give rise to a cognizable ground for federal habeas relief.  Moreover, the Court has found no support in the record for the claims alleged in Grounds One and Two because, to the contrary, it appears that the 18-year sentence imposed in 2001 for three separate rape offenses did not exceed the maximum sentence permitted by state law and was properly determined in accordance with the law in effect at that time.

financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

**IT IS SO ORDERED.**

s/ Michael R. Barrett
Michael R. Barrett, Judge
United States District Court